UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

PAMELA RHODES                                              PLAINTIFF

v.                       CASE NO. 3:08cv00194 BSM

ARKANSAS STATE UNIVERSITY                                  DEFENDANT

## ORDER

Plaintiff Pamela Rhodes ("Rhodes") brings her suit against defendant Arkansas State University ("ASU") claiming race discrimination, harassment based on a hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 2000e, *et seq.* ASU has moved for summary judgment. [Doc. No. 40]. Rhodes has responded. [Doc. No. 43]. For the reasons set forth below, summary judgment is granted and Rhodes's claims are dismissed with prejudice.

### I. FACTS

Taking the facts in the light most favorable to Rhodes, Rhodes was employed by ASU as an Administrative Secretary in Facilities Management. Defendant's statement of facts ("Def.'s sof"), ¶ 1. On March 15, 2007, Rhodes reported to Al Stoverink ("Stoverink"), the Assistant Vice Chancellor for Facilities Management, that Lanny Tinker ("Tinker"), the Director of Quality Improvement, referred to Rhodes as a "tar baby" in a conversation with another ASU employee. Plaintiff's response to defendant's motion for summary judgment ("Pltf.'s resp."), ¶ 1. In a memorandum from Stoverink to Tinker dated March 26, 2007 Stoverink stated:

> [Y]ou are hereby reprimanded for poor judgment and use of a term that resulted in ethnic intimidation based on a person's race. You are further advised that any future use of language having the effect of racial intimidation or creating a hostile work environment will result in further disciplinary action up to and/or including dismissal.

Pltf.'s resp., Ex. A, "Memorandum RE: Disciplinary Warning."

Tinker was given a final warning by Stoverink on April 1, 2007. Pltf.'s resp., ¶ 1; def.'s sof, ¶ 3. The record, however, is unclear what a "final warning" means. Rhodes also alleges that Tinker made a comment to other ASU employees that his family owned slaves and he picked cotton with them. Pltf.'s resp., ¶ 1. Nothing in the record indicates, however, that the comment was reported.

On April 27, 2007, Rhodes was given a verbal warning for insubordination for failing to call in when absent or late, unsatisfactory behavior toward co-workers, and unauthorized absence from the work area. *Id.* at ¶ 2. She was issued an Employee Counseling Statement ("ECS") containing the verbal warning, which stated as follows:

> [Rhodes] failed to notify her supervisor when she was away from the office for 30 plus minutes on 4/17/07 and failed to notify her supervisor when she arrived 20 minutes late for work on 4/24/07 . . . On 4/20/07 [Rhodes] behaved in a manner that was uncooperative and disrespectful to her Supervisor and Co-Worker.

Pltf.'s resp., Ex. 2, April 27, 2007 ECS. Rhodes maintains that she was not late for work on April 24, 2007. Pltf.'s resp., ¶ 2.

Another ECS containing a written warning was issued to Rhodes on August 16, 2007 for disruptive behavior. Pltf.'s resp., Ex. 3, August 16, 2007 ECS. On the same day, Rhodes was also given a final warning for being disrespectful, unprofessional, and insubordinate to

her supervisors. Pltf.'s resp., Ex. 7, August 16, 2007 ECS. The final warning resulted in a three day suspension without pay. *Id.* Rhodes maintains that she never used obscene language before any supervisors or managers. Pltf.'s resp., ¶ 1.

Rhodes filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on August 31, 2007. Complaint, ¶ 6. On September 11, 2007, Rhodes took leave from work due to rheumatoid arthritis. Pltf.'s resp., ¶ 3. Her doctor, Filip Majewski, submitted a leave request every thirty (30) days. *Id.* Rhodes has not returned to work. Complaint; def.'s sof, ¶ 10. The EEOC sent Rhodes a dismissal and notice of rights on August 21, 2008, and Rhodes filed this suit on November 25, 2008. Complaint.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Christoffersen v. Yellow Book U.S.A.*, 536 F.3d 947, 949 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine

dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Further, "[t]he nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal citation and quotation marks omitted).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine . . ." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). It does not weigh the evidence or make

credibility determinations. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

Summary judgment is appropriate on Rhodes's claims of race discrimination, harassment based on a hostile work environment, and retaliation. As set forth above, once the movant demonstrates the lack of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts establishing a genuine issue of material fact. The nonmovant may not rely on mere allegations or denials of her pleading. With each of Rhodes's claims, ASU has successfully established that there is no genuine issue of material fact. In her response, Rhodes makes blanket assertions and simply denies the supported facts presented by ASU. She, therefore, does not meet her burden in overcoming a well supported motion for summary judgment. Accordingly, summary judgment on each of her claims is appropriate.

A.  <u>Harassment</u>

Although it is not entirely clear from the pleadings, it seems that Rhodes claims ASU discriminated against her by creating a hostile work environment. To support a claim of discrimination based on a hostile work environment, Rhodes must show that: (1) she was a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was because of her membership in the protected group; (4) the harassment affected a term, condition, or privilege of her employment; and (5) ASU knew or should have known about the harassment but "failed to take prompt and effective remedial action." *Diaz v. Swift-Eckrich, Inc.*, 318 F.3d 796, 800 (8th Cir. 2003).

In its motion for summary judgment, ASU points out that the evidence in the record fails to establish harassment based on a hostile work environment. ASU acknowledges the comment made by Tinker in which he referred to Rhodes as a "tar baby." It argues, however, that action was taken to address the comment made by Tinker. In support of this position, ASU submits Stoverink's affidavit in which he states that Tinker was given a final warning for making the comment. Defendant's motion for summary judgment ("def.'s motion"), Ex. A, ¶ 7. Further, "Tinker offered his apology to Ms. Rhodes and she accepted that apology." *Id.* In its motion, ASU maintains that Rhodes has presented no other evidence of hostile work environment.

In response, Rhodes references the "tar baby" comment and asserts that Tinker made another comment in which he stated that his family owned slaves and he picked cotton with them. She also points to the memorandum quoted above in which Stoverink issued Tinker a disciplinary warning for the "tar baby" comment as evidence of a hostile work environment. In her complaint, Rhodes alleges that "[employees of ASU] taunted me so bad . . . that I was out on leave of absence until my 6 months was up." Her complaint also alleges that " . . . I got sick while still at ASU I acquired Fibroymalga [sic] because of the stress. I am now disabled."

ASU's arguments strike at Rhodes's establishment of the fourth and fifth elements of a claim of harassment based on a hostile work environment. To meet the fourth element, Rhodes must show that the harassment was "severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive." *Diaz*, 318 F.3d at 800 (quoting *Harris v. Forklift Sys., Inc.*,

510 U.S. 17, 21 (1993)). "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult, that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris*, 510 U.S. at 21 (citations omitted). In determining whether an environment is hostile or abusive, some circumstances to be considered are the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. "The plaintiff must show a practice or pattern of harassment against her or him; a single incident or isolated incidents generally will not be sufficient." *Moylan v. Maries County*, 792 F.2d 746, 749 (8th Cir. 1986).

Rhodes has not shown that the harassment was "severe or pervasive enough to create an objectively hostile or abusive work environment." The two comments made by Tinker and the mere assertions of taunting and a stressful work environment are not enough to meet the fourth element.

Further, Rhodes fails to satisfy the fifth element of her claim. This is true because, although she states that she reported to her supervisor that Tinker called her a "tar baby," it is undisputed that Tinker was disciplined for making that comment.

Rhodes fails to present any evidence establishing that there is a genuine issue of material fact regarding her claim of harassment. Summary judgment on this claim is therefore granted.

B. Race Discrimination

The *McDonnell Douglas* burden-shifting framework is used to analyze claims of race

discrimination. *Clegg v. Ark. Dept. of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007). Under this framework Rhodes must first "establish a prima facie case by showing that [] [] she: (1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; and (3) suffered an adverse employment action; . . . (4) under circumstances permitting an inference of discrimination." *Id.*

In its motion, ASU presents evidence that Rhodes was not meeting ASU's legitimate expectations regarding proper employee conduct. While working for ASU Rhodes was issued three warnings regarding her conduct. According to Michelle Summers ("Summers"), Rhodes's supervisor, on April 17, 2007 Rhodes was out of the office without notifying her supervisor in advance. Def.'s motion, Ex. 2, "Recent Behavior Issues RE: Pamela Rhodes"; and Ex. B, ¶ 6. On April 20, 2007 Summers and Jennifer Cortez ("Cortez"), the Accounts Supervisor, had a meeting with Rhodes to discuss some data entry issues. During this meeting Rhodes allegedly rolled her eyes and was generally uncooperative and disrespectful. Def.'s motion, Ex. 2, "Recent Behavior Issues RE: Pamela Rhodes"; Ex. 2, April 23, 2007 Cortez e-mail to Summers; and Ex. B, ¶ 6.

On April 27, 2007, Rhodes signed an ECS in which she was issued a verbal warning for failing to note her absence on April 17, 2007 and April 24, 2007, and for behaving in an uncooperative and disrespectful manner during her meeting with Summers and Cortez on April 20, 2007. Def.'s motion, Ex. 2, April 24, 2007 ECS. In the ECS Rhodes acknowledged that she did not report to Summers when she was away from her desk because she forgot to, but stated that she was not insubordinate during the meeting on April 20th. *Id.*

The record shows that on August 9, 2007 Rhodes acted out during a staff team

meeting. Def.'s motion, Ex. 6, "Quip Team Meeting Notes"; and Ex. 7, August 16, 2007 ECS. During the meeting she was "very negative . . . continually speaking in very loud tones . . . screaming in very loud tones at [Tinker] and [Summers]." Def.'s motion, Ex. 6, "Quip Team Meeting Notes." Discussing this meeting, Summers stated "[Rhodes's disrespectful behavior] continued for so long that I excused myself from the meeting to take a few deep breaths so that I could remain calm. . . . [Rhodes's] behavior was very disrespectful and insubordinate. I have never been talked to in such a manner." *Id.* Further, "it is my professional opinion that this individual should be reprimanded for this behavior." *Id.*

Rhodes signed another ECS on August 16, 2007 in which she was issued a written warning for disruptive behavior. Def.'s motion, Ex. 3, August 16, 2007 ECS. According to the ECS, Rhodes

> has displayed disruptive behavior to other staff at [facilities management]. There have been several complaints that [Rhodes] was disruptive by speaking loudly while on personal telephone calls or when visitors are in her office. . . . There have also been complaints that [Rhodes] was in other departments disturbing other employees and keeping them from performing his/her job duties.

*Id.* Rhodes signed the statement, but maintained "This I don't know about because it has no names or when or where." *Id.* That same day Rhodes was issued another ECS in which she was given a final warning for personal conduct. Def.'s motion, Ex. 7, August 16, 2007 ECS. The warning addressed her behavior at the August 9, 2007 meeting. *Id.* She was given a three day suspension and stated "I except [sic] this suspension because I was emotional and was speaking out and in a [sic] emotional tone." *Id.*

In response, Rhodes denies some of these allegations and attempts to qualify others.

9

She does not, however, present any evidence that establishes a genuine dispute of material fact on the issue of whether or not she was meeting the legitimate expectations of ASU regarding her employment. Instead, her response relies only on her own denials and allegations in her pleadings. Therefore, summary judgment is appropriate on Rhodes's claim of racial discrimination.

C. Retaliation

Rhodes claims that she was retaliated against due to her filing a complaint against Tinker regarding his "tar baby" comment. The retaliation allegedly took the form of disciplinary action taken against Rhodes.

Rhodes presents no direct evidence of retaliation, and therefore the *McDonnell Douglas* burden shifting framework is used to analyze her claim. "Retaliation claims in which there is no direct evidence of discrimination typically are analyzed under the framework of *McDonnell Douglas* . . ." *Richey v. City of Independence*, 540 F.3d 779, 784 (8th Cir. 2008). Under this framework, the initial burden is on Rhodes to establish a prima facie case of unlawful retaliation. *Id.* A prima facie claim of retaliation requires plaintiff to show: (1) that he or she engaged in a statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events. *Clegg*, 496 F.3d at 928.

"[W]hat is meant by 'causal link' in the present context is a showing that an employer's 'retaliatory motive played a part in the adverse employment action.'" *Kipp v. Mo. Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 208-209 (2d Cir. 1990)). "Generally, more than a

temporal connection . . . is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999). "Our recent cases have, in our view, made clear that a 'mere coincidence of timing' can rarely be sufficient to establish a submissible case of [retaliation]." *Kipp*, 280 F.3d at 897.

ASU maintains that Rhodes has not met the third element of a claim of retaliation because the evidence presented does not establish a causal connection between Rhodes's complaint of Tinker's "tar baby" comment and the disciplinary actions taken against her. In her response Rhodes argues that the disciplinary actions taken against her were retaliatory because "The dates of the [disciplinary] actions prove that the actions were taken after the April 1, 2007 Final Warning given to Lanny Tinker for his use of the words "tar baby" as referred to me, the Plaintiff. I have no disciplinary actions prior to this incident . . ." Pltf.'s resp., ¶ 1. Again, Rhodes has not presented specific facts establishing that there is a genuine issue of material fact for trial. She merely relies on her own allegations. No reasonable jury could find that she was retaliated against. Summary judgment is appropriate.

IV. CONCLUSION

ASU's motion for summary judgment is granted. [Doc. No. 40]. Rhodes's claims are dismissed with prejudice.

IT IS SO ORDERED this 11th day of February, 2010.

_____
UNITED STATES DISTRICT JUDGE